UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FERNANDO CONRIQUEZ, et al.,<br>Plaintiffs,<br>v.<br>CUSHMAN & WAKEFIELD U.S., INC., et al.,<br>Defendants. | Case No. 22-cv-02734-RFL<br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR CLASS CERTIFICATION**<br>Re: Dkt. No. 102 |

Three named Plaintiffs—Fernando Conriquez, Jacob Michael Bryant, and Anthony Ports—bring this putative class action alleging wage and hour violations against three Cushman & Wakefield entities: C&W U.S.; C&W of CA; and C&W Services. Plaintiffs now move to certify one primary class, several subclasses, and several derivative claims. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Conriquez, Bryant, and Ports collectively worked for C&W U.S. and C&W Services in California between 2021 and 2023. They allegedly experienced various wage and hour violations during their employment, including denial of lawful meal and rest breaks, working off-the-clock without pay, overtime paid at the wrong rates, and failure to receive reimbursement for personal cellphone use for work. In their view, companywide policies caused these violations, so they commenced this putative class action to recover.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 23, a plaintiff must follow a two-step process to obtain certification of a class. First, the plaintiff must satisfy the four requirements of Rule

23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Second, if the plaintiff satisfies these four requirements, they must then satisfy the requirements of any of the three subcategories of Rule 23(b). Here, Plaintiffs invoke Rule 23(b)(3), which requires a plaintiff to demonstrate that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Instead, "plaintiffs must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th Cir. 2022).

Courts retain "broad discretion to certify a class." *See Zinser v. Accufix Rsch. Inst, Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Even so, they must nevertheless conduct a "rigorous analysis" that operates "within the framework of Rule 23." *See Dukes*, 564 U.S. at 351; *Zinser*, 253 F.3d at 1186. "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped." *Dukes*, 564 U.S. at 351. Such "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citations omitted).

## III. ANALYSIS

As an initial matter, the scope of the motion must be narrowed. Plaintiffs have

withdrawn C&W of CA from consideration for class certification. (*See* Dkt. No. 120 at 6 n.1.)[1] They have also acknowledged that Bryant, the only named plaintiff to work for C&W Services, did not work for the company during the class period, and they agreed to strike his declaration. (*See id.* at 18 n.28; Dkt. No. 132-6 at 5.) He therefore may not serve as a representative for any class of C&W Services employees.[2] *See Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) ("A named plaintiff must be a member of the class she seeks to represent . . . ." (citation omitted)). In the absence of a potential representative for C&W Services, Plaintiffs may not obtain certification of any class of C&W Services employees. *Cf. Sonneveldt v. Mazda Motors of Am., Inc.*, No. 19-cv-01298-JLS, 2022 WL 17357780, at *37 (C.D. Cal. Oct. 21, 2022) (denying certification where no named plaintiff could represent class). Accordingly, this Order analyzes certification with respect to only Conriquez and Ports as potential representatives of the proposed classes of C&W U.S. employees.

**A. Subclass-Specific Analysis**

**1. Meal Period Subclass**

This subclass concerns employees who purportedly were not provided with required first meal breaks during shifts exceeding five hours. C&W U.S. argues that this subclass does not meet the requirements of commonality and predominance. To establish commonality and predominance here, Plaintiffs must show "significant proof" that the violations stemmed from a uniform companywide practice. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 & n.7 (9th Cir. 2011); *see, e.g.*, *Vvanti v. O'Reilly Auto Enters., LLC*, No. 19-cv-02407-WLH, 2023

---

[1] All citations to page numbers in filings on the docket refer to ECF page numbers.

[2] Plaintiffs stated in their reply brief that they "intend to seek leave to substitute in a new class representative for" C&W Services (Dkt. No. 120 at 18 n.28), and at oral argument, they "renew[ed] [their] request" to "conditionally certif[y]" their C&W Services classes, "subject to locating in another" class representative. As of the date of this Order, Plaintiffs have not sought leave to substitute in a new class representative for C&W Services, and in their briefing they never indicated that they sought conditional certification, thus waiving any such request. Nor have they made the required showing of diligence to allow belated amendment of their complaint to add a new class representative at this late stage. Accordingly, this Order does not analyze conditional certification as to C&W Services.

WL 4445531, at *5-8 (C.D. Cal. July 10, 2023) (no commonality where "the record lacks 'significant proof' that Defendant had a uniform policy of denying meal breaks in accordance with California law").

Plaintiffs point to the experiences of fewer than twenty putative class members and an expert analysis showing that 10.1% (at most) of eligible C&W U.S. shifts during the class period did not include a compliant meal break.[3] (*See* Dkt. No. 102 at 15-17, 24-26.) As for putative class member experiences, during the proposed class period, C&W U.S. "employed more than 2,500 non-exempt, hourly employees in California" across "more than 310 different locations." (*See* Dkt. No. 116-2 at 7.) In that context, Plaintiffs' relatively small sampling of putative class member experiences is not "significant proof" of a uniform companywide practice. *See, e.g.*, *Zayers v. Kiewit Infrastructure W. Co.*, No. 16-cv-06405-PSG, 2017 WL 4990460, at *5 (C.D. Cal. Oct. 26, 2017) (insufficient evidence that "practice occurred on a class-wide basis" where plaintiff "provided only his own and three other declarations as proof of a company-wide practice common to a class of 3,450 Kiewit employees"). And as for the expert analysis, a maximum potential violation rate of approximately 1 in 10 shifts is likewise not significant proof of a uniform companywide practice. Thus, Plaintiffs' evidence does not demonstrate that the common question (whether C&W U.S. provided compliant meal periods) has a common answer subject to common proof (a companywide policy or practice applied across the proposed subclass).

Plaintiffs argue that California's "*Donohue* presumption" bridges this gap. A brief exploration of the law underlying their meal period claims helps show why their reliance on the presumption is misplaced. "Under California law, employers must generally provide employees with one 30-minute meal period that begins no later than the end of the fifth hour of work . . . ."

[3] Plaintiffs submitted 20 putative class member declarations in support of the motion, including their own. Defendant moved to strike five of the declarations. (Dkt, No. 116.) Because the Court does not rely on any of these declarations in its analysis, Defendant's motion is denied as moot.

*Donohue v. AMN Servs., LLC*, 11 Cal. 5th 58, 61 (2021) (citations omitted). In the absence of accurate record keeping, enforcing meal period violations proves difficult, so employers must also record their provision of compliant meal periods. *See id.* at 74. To incentivize compliance with this recordkeeping requirement, California law imposes "a rebuttable presumption of meal period violations" where "time records show[] noncompliant meal periods." *See id.* Under the presumption, "[i]f an employer's records show no [compliant] meal period for a given shift over five hours, a rebuttable presumption arises that the employee was not relieved of duty and no meal period was provided." *See id.* (citation omitted). A record shows noncompliant meal periods where it reflects that a meal period was short, delayed, or missed entirely. *See id.* at 76.

A violation based on a facially deficient time record, however, does not definitively prove that a violation occurred:

> An employer is liable only if it does not provide an employee with the opportunity to take a compliant meal period. The employer is not liable if the employee chooses to take a short or delayed meal period or no meal period at all. The employer is not required to police meal periods to make sure no work is performed. Instead, the employer's duty is to ensure that it provides the employee with bona fide relief from duty and that this is accurately reflected in the employer's time records. Otherwise, the employer must pay the employee premium wages for any noncompliant meal period.

*Id.* at 78 (citation omitted). It is possible, therefore, that a time record will reflect missed, short, or delayed meal periods, thereby triggering the *Donohue* presumption of liability, even though in reality the employee voluntarily chose to forego, shorten, or delay their meal period, which does not trigger liability. For this reason, the presumption is rebuttable. Where plaintiffs present records of noncompliant meal periods, the burden shifts to the employer "to show that plaintiffs were provided with compliant meal periods but chose to work instead." *See Estrada v. Royalty Carpet Mills, Inc.*, 76 Cal. App. 5th 685, 723 (2022) (citations omitted); *see also* CACI 2766B (proof of inaccurate recordkeeping results in automatic meal break liability unless defendant proves provision of compliant meal breaks). Rebutting the presumption thus constitutes an employer's affirmative defense. *See Donohue*, 11 Cal. 5th at 75-76. "To place the burden

elsewhere would offer an employer an incentive to avoid its recording duty and a potential windfall from the failure to record meal periods." *Id.* at 76 (citation omitted).

In sum, the *Donohue* presumption directly concerns the merits of a meal break claim "for a given shift" (*id.* at 74), and when the presumption applies, it flips the burden from an employee affirmatively proving their claim to an employer affirmatively proving their defense. Returning to Plaintiffs' motion for class certification, the question is how (if at all) the presumption affects the commonality and predominance analysis under Rule 23. According to Plaintiffs, the presumption not only creates a presumption of liability but also creates a presumption that commonality and predominance are satisfied. That appears to be the rule in California state court. *See Estrada*, 76 Cal. App. 5th at 723-24. Federal district courts in California, however, are split as to the effect of the presumption on the Rule 23 analysis. *Compare, e.g.*, *Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2022 WL 657972, at *5-7 (N.D. Cal. Mar. 4, 2022), *with Hale v. Brinker Int'l, Inc.*, 765 F. Supp. 3d 904, 911-15 (N.D. Cal. 2025). On this issue, the undersigned agrees with *Hale*: In federal court, federal procedural law governing class certification under Rule 23 applies and places the burden on a plaintiff to demonstrate commonality and predominance. *See Hale*, 765 F. Supp. 3d at 913; *see also In re Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." (citation omitted)).

That does not mean, though, that the *Donohue* presumption is irrelevant at the class certification stage. On the contrary, it provides a potential method for plaintiff employees to present common proof at the merits stage, similar to the way that plaintiffs prove presumptive reliance on a classwide basis in securities fraud or false advertising cases. *See, e.g.*, *Olean*, 31 F.4th at 668. But as applied here to the Meal Period Subclass, the *Donohue* presumption does not bridge the gap of providing significant proof of a classwide policy or practice of denying compliant meal breaks.

As explained above, where a plaintiff provides facially noncompliant time records, the presumption shifts the burden to the defendant to show that a compliant meal break was in fact

offered during that shift. At best, however, Plaintiffs' expert's analysis of time records shows that approximately 1 in 10 shifts had potentially noncompliant meal breaks. Even assuming no rebuttal from C&W U.S., and thus that 1 in 10 shifts indeed included noncompliant meal breaks under the presumption, that is not significant proof of a companywide practice of denying meal breaks. Instead, that record indicates that C&W U.S. mostly provided compliant meal breaks (approximately 9 shifts out of every 10), and Plaintiffs have not shown the existence of a common policy or practice underlying when C&W U.S. did not. *See, e.g.*, *Gonzalez v. HUB Int'l Ltd.*, No. 20-cv-02600-PA, 2021 WL 3261634, at *5 (C.D. Cal. May 25, 2021) (recognizing circumstances in which *Donohue* presumption "does little to satisfy" Rule 23).[4]

### 2. Second Meal Period Subclass

This subclass concerns employees who purportedly were not provided with required second meal breaks during shifts exceeding 10 hours. C&W U.S. again challenges certification based on commonality and predominance. However, unlike with the Meal Period Subclass, Plaintiffs *do* provide significant proof of a companywide practice in connection with the Second Meal Period Subclass.

C&W U.S. policy documents discuss the provision of first meal periods but omit any discussion of second meal periods. (*See, e.g.*, Dkt. No. 103-26 at 3-4.)[5] Moreover, while evidence indicates that C&W U.S. posted California Wage Orders at its worksites informing workers of their right to a second meal break, there is significant evidence that such breaks were not in fact taken: Plaintiffs' expert's analysis of time records shows an average of 78.2% of eligible shifts during the class period with "missing 2nd meals."[6] (*See* Dkt. No. 103-3 at Table

---

[4] Plaintiffs' request to certify a meal break subclass of employees subject to the BOMA/501 collective bargaining agreement is **DENIED** because they raised that request for the first time in their reply brief.

[5] C&W U.S. disputes this, but the sole C&W U.S. policy it cites does not provide for a second meal period. (*See* Dkt. No. 116 at 12 (citing Dkt. No. 116-2 at 30).)

[6] C&W U.S. does not persuasively argue that the violation rate should be calculated by dividing the number of shifts with facially noncompliant second meal periods by the total number of shifts. (*See* Dkt. No. 116 at 9 & n.7.) Only shifts exceeding 10 hours are eligible to have a

5.) Applying the *Donohue* presumption, these 78.2% of eligible shifts are presumed to have noncompliant second meal periods. Taken together, this 78.2% presumptive violation rate and the companywide policy documents described above provide significant proof of a companywide practice of denying compliant second meal periods. And because the policy documents and expert analysis provide a common method of proving liability "in one stroke" for each putative member of the subclass, *Dukes*, 564 U.S. at 350, this subclass satisfies commonality and predominance. *See, e.g.*, *Hale*, 765 F. Supp. 3d at 915; *McCollum v. TGI Fridays Inc.*, No. 22-cv-00392-FWS, 2024 WL 5423064, at *10 (C.D. Cal. Mar. 6, 2024) (commonality satisfied where "each class member could have relied on [expert analysis of time records] to establish liability had each brought an individual action" (citation omitted)).

C&W U.S., of course, would be entitled to rebut the presumption of liability at the merits stage by showing that employees elected not to take their breaks even though the breaks were offered. The question at class certification, however, is not whether this affirmative defense would be successful on the merits but instead to what extent individual inquiries would be required to evaluate the defense. A district court may not decline to certify a class merely because *some* "important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members," or because "the defendant might attempt to pick off the occasional class member here or there through individualized rebuttal." *See Olean*, 31 F.4th at 668 (citations omitted). Rather, "determination of some individualized questions" is permissible so long as "individualized rebuttal does not cause individual questions to predominate." *See id.* (citation omitted).

That C&W U.S. bears the burden of proving its rebuttal affirmative defense "strongly affects the [predominance] analysis":

Putative class members, of course, retain the burden of showing that the proposed

---

noncompliant second meal break, so the denominator is properly set as the total number of shifts exceeding 10 hours.

> class satisfies the requirements of Rule 23, including the predominance requirement of Rule 23(b)(3). . . . [But where a defendant] bears the burden [of proving a defense, courts] assess predominance by analyzing the [] defenses [that the defendant] has actually advanced and for which it has presented evidence.

*See True Health Chiropractic, Inc. v. McKesson Corp.*, 896 F.3d 923, 931 (9th Cir. 2018) (citation omitted). The anticipated rebuttal evidence submitted by C&W U.S. does not indicate that individualized issues would predominate. C&W U.S. identifies three areas in which it would present individualized evidence showing that affected employees did in fact receive compliant second meal breaks. (*See* Dkt. No. 116 at 21-22.)

First, C&W U.S. contends that some of its employees were subject to collective bargaining agreements ("CBAs") that did not require them to clock out for meal breaks because they were paid for that time. The cited CBA provisions, however, do not appear to implicate the taking of second meal periods because they reference only meal periods taken within an eight-hour workday, and second meal periods are required only for shifts exceeding 10 hours. (*See, e.g.*, Dkt. No. 116-3 at 73 ("Eight (8) consecutive hours, *inclusive of a duty free meal period*, shall constitute a day's work." (emphasis added)).) Moreover, even if the cited provisions were pertinent, the applicability of a CBA could be addressed on common proof by examining the relevant agreements and then applying the determination to those employees subject to those agreements. *See, e.g.*, *True Health*, 896 F.3d at 932 (consent defense could be addressed on common proof by "simply examining" the pertinent product registrations submitted or agreements signed by class members to see if they contained consent provisions); *Raines v. U.S. Healthworks Med. Grp.*, No. 19-cv-01539-DMS, 2024 WL 3850812, at *13 (S.D. Cal. Aug. 16, 2024) ("USHW lists . . . a number of potential circumstances that it argues could raise individual inquires and predominate over common facts and issues, including . . . whether the employer is a religious association exempt from liability. . . . [T]o the extent it is determined at a later time that some class members are employed by an exempt religious association, it appears they can be identified from Defendants' database and culled out."). C&W U.S. does not identify any significant variances in the pertinent language of the agreements that would prevent addressing

this issue on common proof. Accordingly, the presence of these agreements does not defeat predominance.

Second, C&W U.S. contends that employees entered comments into the system in which they stated that they took meal breaks. The cited evidence, however, does not reference second meal periods, and C&W U.S. does not identify any evidence of employees submitting any such comments as to second meal periods. (*See* Dkt. No. 116 at 21 (citing Dkt. No. 116-11 at 51-59) (during questioning on time record of eight-hour shift, Plaintiffs' expert testifying at deposition that he did not recall whether he incorporated employee comments into analysis).) Moreover, even if C&W U.S. did identify such evidence, it does not provide any indication that such comments were common, as opposed to being an issue only for a few class members. As such, there is no indication that individualized inquiries about the comments would predominate. Nor does C&W U.S. offer any evidence that these comments were non-uniform or varied in a manner requiring individualized inquiry. On the record before the Court, the evidence identified by C&W U.S. does not indicate that the presentation of proof concerning comments would defeat predominance.

Third, C&W U.S. contends that employees waived their second meal breaks through signed waiver forms or other means. As for signed waiver forms, C&W U.S. has not submitted any copies of its waiver forms (signed or unsigned).[7] One of the putative class members whose declaration Plaintiffs submitted in support of class certification did testify at his deposition that he signed a meal waiver form, but he could not recall if it waived the second meal period or only the first meal period. (*See* Dkt. No. 116-8 at 92.) C&W U.S. identifies no other evidence that its employees signed forms waiving their second meal periods. And even if there were such

[7] C&W U.S. did provide declarations about a Workday time entry attestation system in a supplemental submission after the hearing. (Dkt. Nos. 146-1, 146-2.) That submission, however, was supposed to be limited to whether Conriquez or Ports ever worked shifts over ten hours or were unable to take a second meal break during such a shift. (Dkt. No. 144.) This evidence is not properly considered as to the issues of commonality and predominance, as Plaintiffs have not had an opportunity to respond. Moreover, even if such evidence were properly considered at this juncture, the operation of that system and its legal effect may be shown on common proof, and therefore does not defeat predominance.

evidence, such waivers could be addressed on common proof by examining the waiver forms from C&W U.S.'s records, determining their legal effect, and, if appropriate, culling out those shifts covered by signed waivers.

As for waivers without signed forms, out of the 15 putative class members who submitted declarations in support of class certification and were deposed, C&W U.S. identifies just two employees who testified at their depositions that they voluntarily chose to skip or cut short their second meal periods. (*See* Dkt. No. 116-9 at 19, 76-77.)[8] This limited evidence does not demonstrate that a significant enough number of putative class members are potentially subject to an individualized waiver defense to defeat predominance. *See, e.g.*, *Morgan v. Rohr, Inc.*, No. 20-cv-00574-GPC, 2023 WL 8813171, at *5 (S.D. Cal. Dec. 20, 2023) (citing *Olean*) (declining to decertify meal break class even if "rebuttal evidence identifies a number of uninjured class members" or "demonstrate[s] that certain class members are ineligible for premium pay"); *TGI Fridays*, 2024 WL 5423064, at *11-12 (similar). Moreover, even in the face of some individualized inquiries, "[r]epresentative testimony, surveys, and statistical analysis, along with other types of evidence, are available as tools to render manageable determinations of the extent of liability." *Donohue*, 11 Cal. 5th at 77 (citation and quotation marks omitted); *see, e.g.*, *Amaya v. Menzies Aviation (USA), Inc.*, No. 22-cv-05915-HDV, 2024 WL 1178166, at *7 (C.D. Cal. Feb. 8, 2024). On this record, common questions remain predominant, given the limited evidence of individualized waiver.

*Hale* provides an instructive contrast. There, the defendants submitted significant evidence "reflect[ing] the realities of the restaurant industry"; expert analysis concerning fluctuations in customer volume that varies across times of day and restaurants; automatic notices about meal breaks provided to employees upon clock out; and Rule 30(b)(6) testimony about restaurant culture. *See Hale*, 765 F. Supp. 3d at 909-10, 915-18. Taken together, the

[8] This Order places little weight on C&W U.S.'s "happy camper" declarations. *See, e.g.*, *Nash v. Horizon Freight Sys., Inc.*, No. 19-cv-01883-VC, 2020 WL 7640878, at *1 (N.D. Cal. Dec. 23, 2020).

evidence "paint[ed] the picture of a unique industry where business ebbs and flows, often in unpredictable ways," and in which waiver was the norm rather than the exception. *See id.* at 916; *see also Vega v. Del. N. Cos.*, No. 19-cv-00484-ADA, 2023 WL 6940198, at *17-22 (E.D. Cal. Oct. 20, 2023) (no commonality or predominance for meal break class where defendant provided sufficient evidence that rebuttal of *Donohue* presumption "would require individualized inquiries"); *Felix v. Staples Cont. & Com. LLC*, No. 24-cv-01968-KK, 2025 WL 3050086, at *9-10 (C.D. Cal. Sept. 26, 2025) (similar).

C&W U.S. offers no similar evidence of widespread waiver of the second meal period across the putative class or of a pervasive culture of skipping, delaying, or cutting short second meal breaks. In the absence of such evidence, individualized inquiries about waiver do not predominate. Indeed, accepting some examples of individualized waiver as sufficient to overcome predominance would effectively render meal period classes *per se* uncertifiable, as most employers could presumably find at least a few employees who voluntarily elected to delay or cut short a meal break on some occasions. On this record, Plaintiffs have met their burden to show the Second Meal Period Subclass meets the requirements of commonality and predominance.

### 3. Rest Break Subclass

This subclass concerns employees who purportedly were denied statutorily compliant rest periods. Plaintiffs argue that whether C&W U.S. subjected employees to unlawful rest break policies constitutes a common question that predominates. In support of this proposition, they assert, and C&W U.S. does not dispute, that "[a]ll of Cushman & Wakefield's policies omit any reference to third rest breaks for shifts over 10 hours." (*See* Dkt. No. 102 at 27.) But "[e]stablishing commonality [or predominance] by relying on the existence of a policy requires more than just an assertion that a common policy existed." *Garcia*, 2022 WL 657972, at *7 (citation omitted). Rather, as explained above, a plaintiff must also show, through "significant proof," that the members of the class had actually been subjected to the allegedly unlawful policy. *See Ellis*, 657 F.3d at 983.

As before, other than C&W U.S.'s written policies, Plaintiffs point only to the experiences of fewer than 20 putative class members as evidence of C&W U.S.'s implementation of its allegedly unlawful rest break policies. (*See* Dkt. No. 102 at 17-18, 27.) For the same reason as before, that is not "significant proof" of a companywide practice. Accordingly, Plaintiffs do not satisfy the commonality or predominance requirements with respect to their Rest Break Subclass.

**4. Off-the-Clock Subclass**

This subclass concerns employees who purportedly were not paid for work they performed off-the-clock. It does not meet the requirements of commonality or predominance. "Under California law, [a] plaintiff may establish liability for an off-the-clock claim by proving that (1) he performed work for which he did not receive compensation; (2) that defendants knew or should have known that plaintiff did so; but that (3) the defendants stood idly by." *Williams v. J.B. Hunt Transp., Inc.*, 151 F.4th 1020, 1033 (9th Cir. 2025) (citation and quotation marks omitted). Plaintiffs argue that the second and third elements present common questions: "whether Defendants had knowledge that employees worked outside of their scheduled shifts without compensation and 'stood idly by.'" (*See* Dkt. No. 102 at 29.) Again, however, they rely primarily on a relatively small sample of putative class member declarations. (*See id.* at 19, 29.) They also point to C&W U.S. written policies indicating that employees will be disciplined for working overtime without authorization. (*See id.* at 19.) For the same reason as before, such limited evidence is not "significant proof" that, on a companywide basis, C&W U.S. knew its employees worked off-the-clock and stood idly by.

C&W U.S. also argues that this subclass cannot be certified because resolving off-the-clock claims requires "individualized evidence" concerning various issues, including, among other things, "who if anyone saw [employees] work off the clock" and "whether that observer was a manager and affirmatively knew the employee was actually working off the clock and did not later submit that time for payment." (*See* Dkt. No. 116 at 24-25.) Plaintiffs do not address this in their reply. Nor do they identify any classwide evidence of C&W U.S.'s knowledge.

Courts have recognized that similar individualized inquiries can defeat certification of off-the-clock classes. *See, e.g.*, *Pittmon v. CACI Int'l, Inc.*, No. 21-cv-02044-CJC, 2022 WL 4596554, at *4-7 (C.D. Cal. Aug. 11, 2022) (denying certification of off-the-clock class because, among other things, "whether CACI knew or should have known of off-the-clock work" presented an individualized inquiry that would predominate over any common questions); *cf. Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1163, 1165-66 (9th Cir. 2014) (common questions as to whether employer knew of off-the-clock work and stood idly by where district court found "sufficient evidence" to establish those as common questions concerning practices at employer's 13 California offices, "which are individually managed but under centralized leadership").

Analyzing employees' "time and pay data" to see "how often premiums for non-compliant lunch breaks were paid, how many shifts were eligible for meal periods, and how many meal periods were recorded and timely taken" would not resolve these concerns. (*See* Dkt. No. 102 at 29.) Such evidence says nothing about whether C&W U.S. knew of employees working off-the-clock and stood idly by. Plaintiffs also do not explain how their expert's proposed survey, which would inquire into "off-the-clock activities, if any, performed by employees," would provide common proof of C&W U.S.'s knowledge. (*See id.*; Dkt. No. 103-2 ¶ 8.)

**5. Overtime Rate Subclass**

This subclass concerns employees who purportedly were paid overtime using an incorrect rate of pay, as the rate of pay did not reflect bonuses or other non-discretionary remuneration paid to the employees. C&W U.S. argues that this subclass cannot be certified because Conriquez and Ports, the remaining named plaintiffs, never "earned a bonus of any kind during their employment." (*See* Dkt. No. 116 at 28.) Plaintiffs do not dispute this in their reply. Accordingly, neither Conriquez nor Ports may serve as a representative of this subclass because neither falls within the subclass. *See Sali*, 909 F.3d at 1007. In the absence of a potential representative for the subclass, the subclass cannot be certified. *See, e.g.*, *Sonneveldt*, 2022 WL 17357780, at *37.

**6. Reimbursement Subclass**

This subclass concerns employees who purportedly, without reimbursement, used cell phones to perform necessary work. (*See* Dkt. No. 120 at 17 n.26.) As with several previously discussed subclasses, this subclass likewise fails the requirements of commonality and predominance. California law requires an employer to "indemnify his or her employee for all *necessary* expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." *See* Cal. Lab. Code § 2802(a) (emphasis added). "Ascertaining whether an expense is necessary depends on the reasonableness of the employee's choices." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1077 (9th Cir. 2020) (citation and quotation marks omitted). "Whether a business expense incurred is necessary for purposes of applying Cal. Labor Code § 2802 is ordinarily a question of fact, but the issue may be determined as a question of law when the material facts are undisputed and no conflicting inferences are possible." *Aguilar v. Zep Inc.*, No. 13-cv-00563-WHO, 2013 WL 5615688, at *5 (N.D. Cal. Oct. 10, 2013) (citation and quotation marks omitted).

Plaintiffs point to two categories of instances in which employees used their personal cell phones for work: (1) when employer-provided phones did not work (*e.g.*, bad reception); and (2) when supervisors "only contacted them" on their personal cell phones. (*See* Dkt. No. 120 at 17.) As to the first category, Plaintiffs do not explain how common proof would allow determining the reasonableness of using personal cell phones when employer-provided devices don't work. Indeed, testimony from their own declarants illustrates the individualized nature of such an inquiry. One putative class member, for example, stated during their deposition that they used their personal cell phone about once every three months to contact colleagues when they were in a location without Wi-Fi and had exceeded their data cap. (*See* Dkt. No. 116-7 at 113-16.) Another stated that they were asked to use their personal cell phone for work after their employer-provided device broke. (*See* Dkt. No. 116-8 at 13-15.) These examples highlight that different employees faced different circumstances in deciding to use their personal cell phones

when their employer-provided devices did not work. It is not clear how common proof could establish the reasonableness of using personal cell phones in such varying circumstances. *See, e.g.*, *Chavez v. Lumber Liquidators, Inc.*, No. 09-cv-04812-SC, 2012 WL 1004850, at *9-10 (N.D. Cal. Mar. 26, 2012) (denying certification of reimbursement class because analyzing use of personal cell phones and vehicles poses "individualized factual determination concerning," among other things, "whether the claimed expenses were 'necessary' and incurred in direct consequence of the discharge of the employee's duties").

The lack of common proof on this issue distinguishes this case from situations in which reasonableness could be assessed by reference to companywide policies or practices concerning personal cellphone use. *See, e.g.*, *Castro v. ABM Indus., Inc.*, 325 F.R.D. 332, 339-41 (N.D. Cal. 2018) (inquiry turned on the interpretations of various company instructions and "Work Rules"); *Sinohui v. CEC Ent., Inc.*, No. 14-cv-02516-JLS, 2016 WL 3475321, at *10-11 (C.D. Cal. Mar. 16, 2016) (common question as to whether necessary to use personal cell phones in discharging two discrete duties imposed on general managers as a companywide practice). Plaintiffs here identify no similar policies whose interpretations would, in one stroke, evaluate for each putative class member the reasonableness of using a personal cell phone when an employer-provided phone did not work.

As to the second category (supervisors intentionally communicating with employees on their personal cell phones), as before, Plaintiffs rely solely on a relatively small sample of putative class member declarations. (*See* Dkt. No. 102 at 20-21.) For the same reason as before, this is not "significant proof" that, on a companywide basis, C&W U.S. employed a practice of communicating with employees using their personal cell phones without providing reimbursement.

**B. Typicality and Adequacy as to the Second Meal Period Subclass**

Because only the Second Meal Period Subclass satisfies commonality and predominance, this order proceeds to analyze the remaining Rule 23 requirements as to that subclass only, beginning with typicality and adequacy.

Plaintiffs concede that Conriquez never worked any shifts over ten hours. (Dkt. 145 at 2.) He was therefore not subject to the practice at issue and is neither typical nor adequate to represent the Second Meal Period Subclass.

Plaintiffs have met their burden to show that Ports was subject to the second meal period practice at issue and that his claims are typical. Ports provided an analysis of his payroll records showing that he worked five ten-hour shifts between August 12, 2021, and February 10, 2022, during which he did not receive a second meal break. (Dkt. No. 145-1.) Ports also submitted a declaration stating that he did not take second meal breaks because C&W U.S. never told him he could. (Dkt. No. 145-2.) Ports further attests that he did not waive any second meal periods and did not receive any meal premiums. *Id*. Taken together, this is sufficient evidence that Ports was subject to the practice of which the Second Meal Period Subclass complains.

C&W U.S.'s evidence to the contrary is unconvincing. C&W U.S. argues that Ports must have received premiums for second meal periods he did not waive, citing declarations from company management that describe how its Workday payroll system automatically compensates employees for any break not affirmatively waived. (*See* Dkt. Nos. 146 at 4, 146-1, 146-2.) However, these declarations state that the Workday system did not come online until January 2022. *Id.* Ports worked two of his ten ten-hour shifts prior to that time, on August 12, 2021 and September 15, 2021. (Dkt. No. 145-1 at 7). C&W U.S. offers no evidence that Ports received either a second meal break or a premium for those two shifts. Although C&W U.S. points to Ports' payroll records (Dkt. No. 146 at 3), those records appear to show no meal break premium paid during the pay periods corresponding to those two shifts. (Dkt. No. 116-3 at 160, 162.)

Ports' second meal period claims are also typical because his grievances "are reasonably coextensive with those of absent class members." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir.1998)). As described above, Ports alleges that he did not take second meal breaks because of a company-wide practice of failing to provide them. Though C&W U.S. contends that its system would automatically pay meal period premiums absent a waiver after January 2022, and that it did maintain practices to

train employees on their right to a second meal period, that argument goes to the merits rather than Ports' typicality. The record does not show any circumstances unique to Ports' claim that would make it atypical.[9]

C&W U.S. also challenges Ports' adequacy because, during his deposition, he "disclaimed being a class representative, or representing anyone else." (*See* Dkt. No. 116 at 31.) This challenge relies on an excessively narrow reading of Ports' deposition testimony. Ports had been asked a series of questions about a "separate lawsuit" against his supervisor and "CW" involving allegations of sexual harassment. (*See* Dkt. No. 116-7 at 44-48.) Counsel then asked, "Now, in this case you're seeking to represent yourself; is that correct?" (*Id.* at 48.) It was not clear whether "this case" referred to the putative class action at bar or the separate sexual harassment lawsuit that was being discussed. In response, Ports stated that his attorneys were representing him. (*See id.*) The deposition then continued as follows:

> Q: In this lawsuit that we're here for today . . . who are you seeking to represent in that case? Yourself?
>
> A: Yes.
>
> Q: Anyone else besides for yourself? . . .
>
> A: Just – it was just me.
>
> Q: So through this lawsuit that we're here for today, you're seeking to represent yourself for the things that we discussed thus far today, correct?
>
> A: Correct.
>
> Q: No one else, to the best of your knowledge, correct?
>
> A: Correct.

---

[9] C&W U.S. does raise challenges to Ports' typicality with respect to claims about the *first* meal period, but those do not apply to the second meal period. C&W U.S. claims that Ports' inability to take meal breaks stemmed from difficulties he had with a particular manager. (*See* Dkt. No. 116 at 21-22.) The evidence cited by C&W U.S. refers only to lunches (the first meal period), not the second meal period. (*See id.* (citing Dkt. Nos. 116-7 at 35-42 (Ports' deposition testimony about being able to take lunch breaks under one supervisor but not the other)).)

(*Id.* at 49.) It is not clear whether Ports understood that counsel had switched from talking about his separate sexual harassment lawsuit to discussing the putative class action, and counsel did not follow up to clarify the issue. Nor did counsel ask whether Ports believed himself to be representing a class or understood the role of a class representative. Moreover, Ports submitted a declaration in support of the motion in which he averred that he intends to serve as a class representative. (*See* Dkt. No. 103-6 ¶ 11.) This record is sufficient to show Ports to be an adequate class representative.

### C. Remaining Rule 23 Requirements as to the Second Meal Period Subclass

As discussed above, Plaintiffs satisfy commonality, predominance, typicality, and adequacy with respect to the Second Meal Period Subclass. C&W U.S. does not address numerosity and superiority, the remaining Rule 23(a) and (b)(3) requirements, with respect to this subclass. Nor does it address the adequacy of counsel. Plaintiffs have carried their burden as to these requirements.

Beginning with numerosity, "[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) (citation omitted). During the proposed class period, C&W U.S. "employed more than 2,500 non-exempt, hourly employees in California." (*See* Dkt. No. 116-2 at 7.) It is not clear how many of these employees worked shifts over 10 hours, but given that there were over 14,000 qualifying shifts during the class period (*see* Dkt. No. 103-3 at Table 5), it seems likely that the Second Meal Period Subclass contains at least 40 members.

Turning to superiority, "[l]itigation by class action has long been recognized as a superior method of resolving wage and hour claims in California." *Sales v. United Road Servs., Inc.*, No. 19-cv-08404-JST, 2022 WL 1601416, at *8 (N.D. Cal. Mar. 29, 2022) (citation omitted). Evaluating these claims in a single class action will be significantly more efficient than adjudicating numerous individual duplicative lawsuits regarding C&W U.S.'s second meal period practices. Given that most C&W U.S. shifts are not long enough to trigger a second meal period, there are potentially low damages for individual employees, which could otherwise

prevent vindication of those rights in individual lawsuits.

As for adequacy of counsel, Plaintiffs' counsel have competently prosecuted this action and have significant experience litigating class actions. (*See* Dkt. Nos. 103-1, 103-34.) Accordingly, the Second Meal Period Subclass meets all the requirements for certification.

**D. Derivative Claims**

The parties agree that "certification" of certain "derivative claims" rises and falls with certification of the proposed subclasses. As discussed above, this Order certifies only the Second Meal Period Subclass. "Consequently, any additional claims of [P]laintiffs' that are derivative of their [meal period claims] will be decided on a classwide basis." *Ochoa v. McDonald's Corp.*, No. 14-cv-02098-JD, 2016 WL 3648550, at *8 (N.D. Cal. July 7, 2016).

That includes the alleged wage statement violations. Confusingly, Plaintiffs initially described their Wage Statement Subclass as both a standalone subclass and a source of derivative claims. (*See* Dkt. No. 102 at 30-31 & n.7.) C&W U.S. treats this as solely a derivative claim in their opposition brief. Plaintiffs do not dispute that interpretation in their reply. Moreover, Plaintiffs describe alleged wage statement violations as emanating from off-the-clock work, use of incorrect overtime rates, and failure to pay premiums for missed meal periods and rest periods. (*See id.* at 20, 30-31.) Each of those categories is encompassed by a standalone subclass. Accordingly, this Order treats the alleged wage statement violations as derivative claims and not a separate subclass.

C&W U.S. disputes the propriety of certifying derivative wage statement claims, "as they require individualized inquiries into whether putative class members were injured." (*See* Dkt. No. 116 at 30-31.) Plaintiffs, however, have carried their burden to show that these claims can be resolved on common proof for the same reasons as the underlying claims, and C&W U.S. identifies no evidence supporting its position that the derivative claims involve further individualized inquiries beyond those already discussed above.

**IV. CONCLUSION**

For the foregoing reasons, the motion is **GRANTED IN PART** and **DENIED IN PART**.

The Second Meal Period Subclass is certified as follows: All non-exempt employees of C&W U.S. in California who worked one or more shifts over ten hours during the period of December 29, 2017, through the date of this Order. In addition to the second meal period claim, the subclass may bring derivative claims on a classwide basis, including failure to maintain required employment records, failure to pay all wages due to discharged and quitting employees, failure to furnish accurate itemized wage statements, and unfair business practices. The motion for class certification is otherwise denied. Plaintiff Ports is appointed as class representative, and Matern Law Group, PC, and Makarem & Associates APLC are appointed as class counsel.

**IT IS SO ORDERED.**

Dated: September 24, 2026

RITA F. LIN
United States District Judge